DAVIS, Chief Justice.
[¶1] Wyoming Jet Center, LLC (Wyoming Jet) filed a petition in district court seeking access to certain records held by the Jackson Hole Airport Board. On cross-motions for summary judgment, the district court concluded that the Special District Public Records and Meetings Act governs the Board's record disclosure requirements, not the Wyoming Public Records Act, and it ruled in the Board's favor. We reverse.
ISSUE
[¶2] Wyoming Jet presents four issues, which we summarize as the following single question: Did the district court err in ruling that the Jackson Hole Airport Board is not subject to the record disclosure requirements of the Wyoming Public Records Act?
FACTS
[¶3] In 1968, the Town of Jackson and Teton County entered into an agreement to create the Jackson Hole Airport Board, a joint powers board tasked with operating the Jackson Hole International Airport (Airport). The Board consists of five voting members, all of whom are qualified electors of Teton County jointly appointed by the Jackson Town Council and the Teton County Board of County Commissioners. The Board currently operates under an agreement that was updated in 2013.
[¶4] The Board receives grants from the Federal Aviation Administration that require the Airport to use more than one fixed base operator (FBO), if available, unless the Board itself serves in that role. In May 2017, the Airport had a single FBO, Jackson Hole Aviation, LLC, and Wyoming Jet applied to serve as a second FBO. The Board initially responded by issuing a request for proposals for a second FBO. In July 2017, however, the Board changed course and decided to consider the option of purchasing Jackson Hole Aviation's assets and serving as the FBO itself. It thus withdrew its request for proposals and set the question to be heard at an upcoming meeting. In a subsequent resolution declaring its decision to proceed with the option of serving as the FBO, the Board cited its authority to act as FBO and what it deemed to be the advantages of doing so.
WHEREAS , such authority and powers granted to municipal corporations and counties may be vested in an airport board, the Town of Jackson and County of Teton have in fact vested such power and authority in the Board, and the Board may therefore lawfully provide the commercial aeronautical services typically offered by an FBO, and appoint its own personnel necessary to provide such services; [and]
* * * *
WHEREAS , the Board's entry into the Asset Purchase Agreement with Jackson Hole Aviation LLC ... and ... the exercise of its proprietary exclusive right to offer all FBO services on the Airport, would allow for better efficiency and safety of operations on the general aviation ramp *913 and at the fuel facility, avoid the cost of constructing duplicate FBO facilities, permit the Board to achieve a good return on its investment-helping to assure the Airport can fund needed capital improvements and remain financially self-sufficient, and would therefore be in the best interests of the Airport and the public.
NOW THEREFORE , in open meeting and on motion made, seconded and unanimously adopted, the Jackson Hole Airport Board hereby resolves as follows: ... to enter into [an Asset Purchase Agreement with Jackson Hole Aviation and to serve as FBO].
[¶5] On August 31, 2017, Wyoming Jet submitted a letter to the Board requesting the opportunity to inspect or obtain copies of documents relating to the Board's then pending decision to purchase Jackson Hole Aviation's assets and serve as the Airport's sole FBO, pursuant to the Wyoming Public Records Act (WPRA). The Board denied that it was subject to the Act, but it nonetheless made some documents available for inspection. As to those documents to which the Board denied access, it variously cited confidentiality, privilege, and the unduly burdensome nature of producing the requested documents as the bases for its denials.
[¶6] On October 12, 2017, Wyoming Jet filed a "Petition for Access to Records" against the Board and the Airport's executive director. Through its petition, Wyoming Jet sought an order directing disclosure of the requested records, or in the alternative, a log and in camera review of the withheld documents. The Board answered and counterclaimed for a declaration that it is governed solely by the Special District Public Records and Meetings Act (Special District Act) and not the WPRA. It further requested a declaration that the records requested are not within the scope of records required to be maintained for public review under the Special District Act.
[¶7] The parties subsequently agreed that the threshold question at issue in the dispute was whether the Board was subject to the requirements of the WPRA. They filed cross-motions for summary judgment, with each agreeing that the question was one of law, and that there were no genuine issues of material fact. On April 5, 2018, the district court entered an order granting the Board's summary judgment motion. The court reasoned (with some citations omitted):
24. Looking at the plain language of the Special District Act, the Court cannot agree with Jet Center's interpretation of the Act. The words used throughout the Special District Act convey a specific and obvious meaning. Section 303(a) specifies a narrow list of documents that the special district must maintain. There is no suggestion that these are a subset of a larger collection of records to be stored. Section 303(b), (c), and (d) address where those records should be stored. If all records available through the Wyoming Public Records Act were also to be made available, then Section 303 would be meaningless because each entity would also need to store Wyoming Public Records Act records. This Court is not to interpret statutes in a manner that renders other provisions a nullity.
25. Further, it is a maxim of statutory interpretation that a specific statute applies over a general statute. The Wyoming Public Records Act is general-it applies to "the state or any agency, institution or political subdivision" and "requires disclosure of all communications or other information." The Wyoming Public Records Act lacks specificity regarding which entities the Act applies to and which records must be disclosed. By contrast, the Special District Act is specific-it expressly identifies twenty-three entities to which it applies (plus one additional category) and it expressly identifies the types of documents to be maintained. This Court is obligated to find that the more specific Act controls.
26. To the extent the briefing in this matter asserts that the Airport Board is a political subdivision and is therefore subject to the Wyoming Public Records Act notwithstanding the express provision placing it within the Special District Act, the Court notes that the Wyoming Supreme Court has addressed the nature of joint powers boards, albeit in a different context. In *914 Weston County Hospital Joint Powers Board v. Westates Construction Co. , 841 P.2d 841 (Wyo. 1992), the Wyoming Supreme Court determined that a joint powers board is not a "political subdivision" for the purposes of applying certain payment provisions of the Wyoming Governmental Claims Act because it does not have three "badges" of a political subdivision: the power to tax, being made of elected officials, and having defined geographic boundaries. The same court went on to explain that the joint powers board is not a political subdivision merely because it is created by other political subdivisions (the Town and County). The Airport Board relies on this case as supportive authority. After reviewing this case and the statutes providing for the creation of the joint powers board, this Court agrees that a joint powers board is not a "political subdivision" merely because it was created by two other political subdivisions. As an airport joint powers board created through the Joint Powers Act, the Airport Board is different in kind than the Town and County which created it. This further supports the conclusion that the Airport Board falls within the provisions of the Special District Act, not the Wyoming Public Records Act.
27. Conclusion. The Court finds that both sides present compelling arguments. The interpretation of the Special District Act appears to be one of first impression in Wyoming. In the absence of Wyoming Supreme Court opinions analyzing the overlap or conflict, if any, between the Wyoming Public Records Act and the Special District Act, this Court must adhere to the established rules of statutory interpretation-to avoid reading statutes in a manner to render other portions meaningless and to recognize that specific provisions control over general provisions.
* * * *
28. Upcoming Status Conference. The Jet Center's Petition was filed through the Wyoming Public Records Act, not the Special District Act. While the Special District Act applies in this matter, that Act also provides that the methods of disclosure to be followed are those in the Wyoming Public Records Act. Wyo. Stat. § 16-2-303(a). At oral argument, the parties were not able to specifically identify what remains to be done in this case if the Special District Act applies. The parties are directed to confer in good faith through counsel regarding any remaining disclosure obligations. Concurrent to this Order, this matter shall be set for a status conference to discuss what remains at issue.
[¶8] On April 10, 2018, the parties filed a stipulated motion for entry of a final judgment for the following reasons:
2. Petitioner is not seeking any records among the categories listed in the Special District Act, but does continue to seek records that it contends would be available pursuant to the Wyoming Public Records Act, such as emails and other correspondence.
3. The parties agree that the Court may enter a final judgment, as there is nothing further that the Court needs to adjudicate beyond its determination that only the Special District Act applies to this action.
[¶9] The district court thereafter entered its final judgment, and Wyoming Jet filed a timely notice of appeal to this Court.
STANDARD OF REVIEW
[¶10] We generally review a district court's grant of summary judgment as follows:
We review a district court's order granting summary judgment de novo and afford no deference to the district court's ruling. Thornock v. PacifiCorp , 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016). This Court reviews the same materials and uses the same legal standard as the district court. Id . The record is assessed from the vantage point most favorable to the party opposing the motion ..., and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record. Id . A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. Id .
*915 Reichert v. Daugherty , 2018 WY 103, ¶ 11, 425 P.3d 990, 994 (Wyo. 2018) (quoting Pioneer Homestead Apartments III v. Sargent Eng'rs, Inc. , 2018 WY 80, ¶ 15, 421 P.3d 1074, 1078-79 (Wyo. 2018) ).
[¶11] The parties agree that the appeal presents no disputed issues of fact and that the sole question before this Court is one of statutory interpretation. Statutory interpretation is a question of law that we review de novo . Phoenix Vintners, LLC v. Noble , 2018 WY 87, ¶ 10, 423 P.3d 309, 312 (Wyo. 2018).
DISCUSSION
[¶12] The district court ruled that the Special District Act defines the entirety of the Board's record retention and disclosure obligation. Our review of this ruling requires that we look to our rules of statutory interpretation to determine the Special District Act's purpose and function, and the applicability of the WPRA to the Board.
"When we interpret statutes, our goal is to give effect to the intent of the legislature, and we 'attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute.' " Fugle v. Sublette County School Dist. No. 9 , 2015 WY 98, ¶ 8, 353 P.3d 732, 734 (Wyo. 2015) (quoting Krenning v. Heart Mountain Irrigation Dist. , 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo. 2009) ). "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.' " Adekale v. State , 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015) (quoting Rodriguez v. Casey , 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo. 2002) ).
We therefore construe each statutory provision in pari materia , giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.
PacifiCorp, Inc. v. Wyo. Dep't of Revenue , 2017 WY 106, ¶ 10, 401 P.3d 905, 908-09 (Wyo. 2017) (quoting Nicodemus v. Lampert , 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014) ).
[¶13] We will address first the Special District Act and its purpose and function. We will then turn to the WPRA's applicability.
A. Special District Act
[¶14] The district court concluded that the Special District Act operates to limit the records that the Board must retain. From that conclusion, the court reasoned that the Act also limits the records that the Board is required to make available for public inspection. We disagree with both conclusions. Based on the Act's plain language, we conclude it defines neither the Board's record retention requirements nor its disclosure requirements. We instead interpret the Act as requiring that certain documents be readily accessible for public review and providing options for ensuring that review is possible.
[¶15] The Special District Act applies to a list of twenty-three types of entities, including several specified districts and authorities, joint powers boards generally, and airport joint powers boards specifically. Wyo. Stat. Ann. § 16-12-202(a) (LexisNexis 2017). It states its purpose as follows:
This article specifies requirements pertaining to public records and meetings of the entities listed in W.S. 16-12-202(a) where the principal act is silent or unclear. The specific provisions of a principal act or the Wyoming Public Records Act, W.S. 16-4-201 through 16-4-205, are effective and controlling to the extent they conflict with this article.
Wyo. Stat. Ann. § 16-12-302(a) (LexisNexis 2017) (emphasis added).
*916 [¶16] As to the covered entities' public record-related obligations, the Special District Act provides:
(a) All special districts and other specified entities shall maintain a copy of the following documents , if the documents exist, provided that the Wyoming Public Records Act and all applicable federal statutes shall control the obligations of disclosure of those documents : adopted minutes of all meetings of the governing board and the governing board's committees and subcommittees, records of meetings of the governing board and the governing board's committees and subcommittees, audits, financial statements, election results, budgets, bylaws, rate schedules, policies and employment contracts with all administrators. When consistent with the requirements of this section, all special districts or other specified entities shall produce an original document upon request .
(b) All special districts and other specified entities shall maintain the records described in subsection (a) of this section for public review at their business office if the business office is open to the public for at least twenty (20) business hours each week.
(c) If a special district or other specified entity cannot maintain the records described in subsection (a) of this section as required under subsection (b) of this section, the special district or other specified entity shall file copies of those records with the county clerk in the county wherein the largest portion of the district or entity lies. The documents may be in an electronic format unless otherwise specified by the county clerk. The county clerk may specify the format for records filed pursuant to this subsection.
(d) All special districts or other specified entities shall provide by September 30 each year to the county clerk in every county wherein the entity exists a filing specifying where documents required under subsection (a) of this section are maintained for public review.
Wyo. Stat. Ann. § 16-12-303.
[¶17] We begin with the district court's conclusion that the documents listed in section 303(a) are the only records the Board must retain. While the question of what records the Board must retain is not before this Court, and we do not offer an opinion on that question, we disagree that section 303(a) defines the Board's record retention requirements. Record retention is instead governed by a separate set of statutes. See Wyo. Stat. Ann. § 9-2-401 through 413 (LexisNexis 2017). Those statutes define what constitutes a public record for retention purposes, and they specifically define them to include the records of any "county, municipality, special district or other local entity." Wyo. Stat. Ann. § 9-2-401(a)(iv)-(v). The statutes further declare:
All public records are the property of the state. They shall be delivered by outgoing officials and employees to their successors and shall be preserved, stored, transferred, destroyed or disposed of, and otherwise managed, only in accordance with W.S. 9-2-405 through 9-2-413.
Wyo. Stat. Ann. § 9-2-410.
[¶18] We presume that the legislature acts "in a thoughtful and rational manner with full knowledge of existing law, and that it intend[s] new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence." See PacifiCorp , ¶ 10, 401 P.3d at 908-09 (quoting Nicodemus , ¶ 13, 336 P.3d at 674 ). The record retention statutes were in place when the legislature enacted the Special District Act in 2010, and the Act contains no language suggesting that the legislature intended it to eliminate or replace the preexisting record retention requirements. 2010 Wyo. Sess. Laws Ch. 18, § 1. Indeed, while the Act does contain a list of specific documents, what it requires with respect to those documents is that a copy be maintained. Wyo. Stat. Ann. § 16-12-303(a). It further directs where and how those copies are to be made available for public review. We view this not as a record retention requirement, but rather as a recognition that certain documents should be readily available for public review, and an acknowledgement that some of the covered entities may not be situated *917 and staffed in a manner to accommodate the required review.[1]
[¶19] This reading of the Special District Act is confirmed by its other requirements. The last sentence of section 303(a) directs that "[w]hen consistent with the requirements of this section, all special districts or other specified entities shall produce an original document upon request." Wyo. Stat. Ann. § 16-12-303(a). This requirement highlights that the documents being maintained under the Act are copies and suggests that the original record may be stored or archived elsewhere, along with other records that may not be as readily available for public review.[2]
[¶20] As further confirmation that the Special District Act has a narrow focus of making copies of certain documents readily available for inspection, we look to sections 303(b) through (d). Sections 303(b) and (c) require that the documents be made available at the entity's office if it is open to the public for at least twenty hours per week, and if not, they are to be filed with the appropriate county clerk. Section 303(d) requires that the county clerk be kept informed of where the documents are being made available for public review. Together these provisions ensure that the documents are stored in a location that is known and that allows reasonable public access.
[¶21] When we read the Special District Act as a whole and in harmony with the other laws applicable to the covered entities, we must conclude that it does not establish or limit the covered entities' record retention requirements. We likewise find it clear that it does not establish or limit their public record disclosure requirements.
[¶22] First, the Act directs that "the Wyoming Public Records Act ... shall control the obligations of disclosure of [the listed] documents." Wyo. Stat. Ann. § 16-12-303(a). Additionally, the Act incorporates the WPRA and declares its requirements controlling in the event of a conflict: "The specific provisions of ... the Wyoming Public Records Act, W.S. 16-4-201 through 16-4-205, are effective and controlling to the extent they conflict with this article." Wyo. Stat. Ann. § 16-12-302(a). The WPRA applies its disclosure requirements to a much broader universe of records than the narrow set of copies of documents listed in section 303(a) of the Special District Act. See Wyo. Stat. Ann. § 16-4-201(a)(v). Were we to interpret the Special District Act as limiting the covered entities' disclosure requirements to solely the section 303(a)-listed documents, the laws would have an inherent conflict, and the requirements of the WPRA would control. With that resulting circularity, we find it clear that what the legislature intended was that the Special District Act would ensure ready public access to a certain narrow set of copies of documents, while the WPRA would otherwise govern the covered entities' record disclosure requirements.
[¶23] We turn then to the remaining question of whether the Board qualifies as a political subdivision subject to the WPRA's record disclosure requirements.
B. Wyoming Public Records Act
[¶24] The WPRA defines the records subject to its disclosure requirements to include the following:
"Public records" when not otherwise specified includes any information in a physical form created, accepted, or obtained by the state or any agency, institution or political subdivision of the state in furtherance of its official function and transaction of public business which is not privileged or confidential by law. Without limiting the foregoing, the term "public records" includes any written communication or other information, whether in paper, electronic, *918 or other physical form, received by the state or any agency, institution or political subdivision of the state in furtherance of the transaction of public business of the state or agency, institution or political subdivision of the state , whether at a meeting or outside a meeting. Electronic communications solely between students attending a school in Wyoming and electronic communications solely between students attending a school in Wyoming and a sender or recipient using a nonschool user address are not a public record of that school. As used in this paragraph, a "school in Wyoming" means the University of Wyoming, any community college and any public school within a school district in the state.
Wyo. Stat. Ann. § 16-4-201(a)(v) (emphasis added).
[¶25] The district court ruled that the Board is not subject to the WPRA's record disclosure requirements because it is neither a state entity nor a political subdivision. We conclude that the court interpreted the term political subdivision too narrowly and gave it a meaning that is not in keeping with the WPRA's purpose or its definition of the term.
[¶26] In ruling that the Board is not a political subdivision subject to the WPRA, the district court relied on the following definition:
The criteria for identifying a "political subdivision" are found in Witzenburger v. State ex rel. Wyoming Community Development Authority , 575 P.2d 1100, reh'rg denied , 577 P.2d 1386 (Wyo. 1978). There, we concluded that a " 'political subdivision' must be an entity of the same kind or class as a county, city, township, town or school district," Witzenburger , 575 P.2d at 1112, and that it would be characterized by certain distinctive badges including a prescribed geographic area, a requirement for having officers duly elected by the inhabitants of that area at a public election, and a legal power to levy and collect taxes. Witzenburger . This is still the applicable test. While the list we have recited is not all-inclusive, any "body politic" not possessing at least these three basic attributes cannot be a "political subdivision." See Witzenburger .
Weston Cty. Hosp. Joint Powers Bd. v. Westates Constr. Co. , 841 P.2d 841, 846 (Wyo. 1992).
[¶27] The district court's reliance on this definition is misplaced. In Weston County , the Court defined the term political subdivision for purposes of applying state constitutional restrictions on moneys to be paid out of the state treasury. Id. at 845-46. The constitutional provision at issue did not define the term, and the question before the Court was not one of legislative intent. Id . In contrast, our focus here is entirely on legislative intent, and specifically on the entities to which the legislature intended the WPRA to apply.
[¶28] To find that intent, we look to the WPRA's language, which we interpret liberally in favor of public record disclosure. Powder River Basin Res. Council v. Wyo. Oil & Gas Conservation Comm'n , 2014 WY 37, ¶ 33, 320 P.3d 222, 231 (Wyo. 2014) (quoting Allsop v. Cheyenne Newspapers, Inc. , 2002 WY 22, ¶ 10, 39 P.3d 1092, 1095 (Wyo. 2002) ); see also Aland v. Mead , 2014 WY 83, ¶ 12, 327 P.3d 752, 759 (Wyo. 2014) (Court is guided in its interpretation by WPRA's purpose of maintaining an open and accountable government). The WPRA defines political subdivision to mean "every county, city and county, city, incorporated and unincorporated town, school district and special district within the state." Wyo. Stat. Ann. § 16-4-201(a)(iv). The term special district is not separately defined, but we are unwilling to limit its meaning, as the Board advocates we should, to entities that are statutorily designated as special districts or have the term district in their names. We instead, consistent with our rule of liberal interpretation, give the term its broader, more general meaning of "a political subdivision of a state established to provide a single public service (as water supply or sanitation) within a specific geographical area." Merriam-Webster's Collegiate Dictionary 1197 (11th ed. 2003).[3]
*919 [¶29] The Board was indisputably created to perform a public function. The joint powers agreement under which the Board operates gives it "the authority and powers with respect to the Jackson Hole Airport as are granted in W.S. § 10-5-101 through 10-5-204," which is the statutory authority of municipalities and counties to operate a local airport. Additionally, the Board's resolution by which it made the decision to serve as the Airport's FBO cited its authority to exercise county and municipal powers and declared that it was acting in the best interests of the Airport and the public. Finally, the Board, like any special district, was established to perform a single public service, operation of the Airport, within a specific geographic location, Teton County. For purposes of the WPRA, it is therefore a special district. See also Black's Law Dictionary 577 (10th ed. 2014) (citing a transit authority as an example of a special district); Sierra Club v. Austin Transp. Study Policy Advisory Comm. , 746 S.W.2d 298, 301 (Tex. App. 1988) (holding named committee to be a special district and therefore subject to open meetings law where it was created to accomplish "primarily local benefit or improvement" of bringing federal highway funds into area for highway planning and construction).
[¶30] Interpreting the WPRA as applicable to the Board is in keeping with the Act's purpose of maintaining an open and accountable government. Aland , ¶ 12, 327 P.3d at 759. It is also in keeping with the records at which the Act's disclosure requirements are directed, those "created, accepted, or obtained" in the "transaction of public business." Wyo. Stat. Ann. § 16-4-201(a)(v). Moreover, it avoids the absurd result that would follow if we were to interpret the WPRA as inapplicable to the Board. That would mean that if either Teton County or the Town of Jackson operated the Airport individually, their records would be subject to disclosure, but since they run it jointly, no disclosure obligation would exist. We can think of no policy justification or rational legislative purpose for such a result.[4] See City of Torrington v. Smith , 2016 WY 126, ¶ 7, 386 P.3d 336, 340 (Wyo. 2016) ("[W]e strive to avoid an interpretation that produces an absurd result.").
[¶31] Finally, this interpretation is consistent with the Special District Act. By that act, the legislature included airport joint powers boards alongside special districts, treated them equally, and declared the WPRA controlling. Wyo. Stat. Ann. § 16-12-202, 302. We view this as a clear expression of the legislature's understanding and intention that all the entities subject to the Special District Act are likewise subject to the WPRA's disclosure requirements.[5]
CONCLUSION
[¶32] The Special District Act is a limited purpose act that specifies certain documents of which its covered entities must maintain copies and make readily accessible to the public. It is not a substitute for and does not change the WPRA's applicability. The WPRA governs the covered entities' public record disclosure requirements, including those of the Board. We therefore reverse and remand for proceedings consistent with this opinion.

Notably, the retention statutes contemplate this type of scenario and provide a process for accommodating specific laws that may require a governmental entity to maintain copies of certain records for a specified period or permanently. See Wyo. Stat. Ann. § 9-2-413.

This dovetails with the WPRA requirement that "[i]f a public record is readily available, it shall be released immediately to the applicant so long as the release does not impair or impede the agency's ability to discharge its other duties." Wyo. Stat. Ann. § 16-4-202(c). The WPRA further provides time frames for informing a public record applicant if a record is not readily available because it is in active use or in storage. Id .

Political subdivision generally means "[a] division of a state that exists primarily to discharge some function of local government." Black's Law Dictionary 1346 (10th ed. 2014).

The Board suggests the justification might be found in the burden WPRA compliance would place on an entity like the Board, which has fewer resources available to respond to a public records request. The same may be said of any special district, however, so we do not view that as a reasonable explanation.

The Board argues to the contrary and asserts that the Special District Act shows that it is not a special district because the Act refers to it as an "other specified entity," rather than as a special district. While that is one interpretation, it is not an interpretation that favors disclosure, which is our guiding principle. Additionally, we again see no reason to treat the Board differently from other special districts. Such a result would mean the records of a cemetery or recreation district are subject to the WPRA's disclosure requirements, but the records of an airport board are not. These entities all perform public functions, and we are simply unable to discern any policy justification for the proposed disparate treatment.